15CV6287

Page 2

## MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT
## SENTENCE BY A PERSON IN FEDERAL CUSTODY

| United States District Court | District |
|---|---|

| Name (under which you were convicted): DEE DEIDRE FARMER | Docket or Case No.: 1:12-CR-00758-AJN |
|---|---|
| Place of Confinement: FCI GILMER | Prisoner No.: 23288037 |

| UNITED STATES OF AMERICA | Movant (include name under which you were convicted) |
|---|---|
| v. | DEE DEIDRE FARMER |

### MOTION

1. (a) Name and location of court that entered the judgment of conviction you are challenging:

   U.S. District Court Southern District N.Y.

   (b) Criminal docket or case number (if you know): 1:12-CR-00758-AJN

2. (a) Date of the judgment of conviction (if you know):

   UNKNOWN

   (b) Date of sentencing: UNKNOWN

3. Length of sentence: 72 MONTHS

4. Nature of crime (all counts):

   CREDIT CARD FRAUD

5. (a) What was your plea? (Check one)

   (1) Not guilty ☐     (2) Guilty ☑     (3) Nolo contendere (no contest) ☐

   (b) If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, what did you plead guilty to and what did you plead not guilty to?

   ALL COUNTS

6. If you went to trial, what kind of trial did you have? (Check one)     Jury ☐     Judge only ☐

   N/A

2015 AUG 11  A 8: 11   RECEIVED PRO SE OFFICE



7.  Did you testify at a pretrial hearing, trial, or post-trial hearing?    Yes ☐    No ☑

8.  Did you appeal from the judgment of conviction?    Yes ☑    No ☐

9.  If you did appeal, answer the following:

   (a) Name of court: *U.S. COURT of APPEALS 2nd Circuit*

   (b) Docket or case number (if you know): *UNKNOWN*

   (c) Result: *DISMISSED WITHOUT PREJUDICE AT defendant request*

   (d) Date of result (if you know): *UNKNOWN*

   (e) Citation to the case (if you know): *UNKNOWN*

   (f) Grounds raised: *ERROR and CALculating sentencing guidelines?*

   (g) Did you file a petition for certiorari in the United States Supreme Court?    Yes ☐    No ☑

      If "Yes," answer the following:

      (1) Docket or case number (if you know): *N/A*

      (2) Result: *N/A*

      (3) Date of result (if you know): *N/A*

      (4) Citation to the case (if you know): *N/A*

      (5) Grounds raised: *N/A*

10. Other than the direct appeals listed above, have you previously filed any other motions, petitions, or applications concerning this judgment of conviction in any court?

    Yes ☐    No ☑

11. If your answer to Question 10 was "Yes," give the following information:

    (a) (1) Name of court: *N/A*

       (2) Docket or case number (if you know): *N/A*

       (3) Date of filing (if you know): *N/A*

(4) Nature of the proceeding: *N/A*

(5) Grounds raised: *N/A*

(6) Did you receive a hearing where evidence was given on your motion, petition, or application?   Yes ☐   No ☑

(7) Result: *N/A*

(8) Date of result (if you know): *N/A*

(b) If you filed any second motion, petition, or application, give the same information:

(1) Name of court: *N/A*

(2) Docket or case number (if you know): *N/A*

(3) Date of filing (if you know): *N/A*

(4) Nature of the proceeding: *N/A*

(5) Grounds raised: *N/A*

(6) Did you receive a hearing where evidence was given on your motion, petition, or application?   Yes ☐   No ☑

(7) Result: *N/A*

(8) Date of result (if you know): *N/A*

(c) Did you appeal to a federal appellate court having jurisdiction over the action taken on your motion, petition, or application? *N/A*   *D.O FARMER*

(1) First petition:   Yes ☑   No ☑

(2) Second petition:   Yes ☐   No ☑

(d) If you did not appeal from the action on any motion, petition, or application, explain briefly why you did not: *N/A*

12. For this motion, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the <u>facts</u> supporting each ground.

**GROUND ONE:** *INEFFECTIVE Assistant Counsel*

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):
*Denial of Aids defense; SEE Attachments*

(b) **Direct Appeal of Ground One:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐   No ☑

(2) If you did not raise this issue in your direct appeal, explain why: *Ineffective Assistant Counsel MUST BE Raised in a 2255?*

(c) **Post-Conviction Proceedings:**

(1) Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☐   No ☑  *N/A*

(2) If your answer to Question (c)(1) is "Yes," state:

Type of motion or petition: *N/A*

Name and location of the court where the motion or petition was filed: *N/A*

Docket or case number (if you know): *N/A*

Date of the court's decision: *N/A*

Result (attach a copy of the court's opinion or order, if available): *N/A*

(3) Did you receive a hearing on your motion, petition, or application?

    Yes ☐   No ☑

(4) Did you appeal from the denial of your motion, petition, or application? *N/A*

    Yes ☐   No ☑

(5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal? *N/A*

    Yes ☐   No ☑

(6) If your answer to Question (c)(4) is "Yes," state: *N/A*

Name and location of the court where the appeal was filed: *N/A*

Docket or case number (if you know): *N/A*

Date of the court's decision: *N/A*

Result (attach a copy of the court's opinion or order, if available): *N/A*

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue: *N/A*

GROUND TWO: *INEFFECTIVE ASISTANT of COUNSEL AT SENTENCING*

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

*INEFFECTIVE ASISTANT of COUNSEL AT SENTENCING*
*COUNSEL ALLOWED FICTITOUS AND DID PERSONS to BE USED*
*IN CALCULATING POTENTIAL LOSS VALUE. SEE ATTACHMENTS*

(b) **Direct Appeal of Ground Two:**

    (1) If you appealed from the judgment of conviction, did you raise this issue?

        Yes ☐   No ☑

    (2) If you did not raise this issue in your direct appeal, explain why: INEFFECTIVE ASISTANT OF COUNSEL MUST BE RAISED IN A 2255.?

(c) **Post-Conviction Proceedings:**

    (1) Did you raise this issue in any post-conviction motion, petition, or application?

        Yes ☐   No ☑

    (2) If your answer to Question (c)(1) is "Yes," state: N/A

    Type of motion or petition: N/A

    Name and location of the court where the motion or petition was filed: N/A

    Docket or case number (if you know): N/A

    Date of the court's decision: N/A

    Result (attach a copy of the court's opinion or order, if available): N/A

    (3) Did you receive a hearing on your motion, petition, or application?

        Yes ☐   No ☑

    (4) Did you appeal from the denial of your motion, petition, or application?

        Yes ☐   No ☑ N/A

    (5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?

        Yes ☐   No ☑ N/A

    (6) If your answer to Question (c)(4) is "Yes," state: N/A

    Name and location of the court where the appeal was filed: N/A

    Docket or case number (if you know): N/A

    Date of the court's decision: N/A

    Result (attach a copy of the court's opinion or order, if available): N/A

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue: *N/A*

**GROUND THREE:** *INEFFECTIVE Asistant of Counsel AT SENTENCING*

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

*ERROR IN MANNER THAT POTENTIAL LOSS VALUE WAS Calculated By The Court. SEE 6.22.15 Letter from FARINER. to Judge NATHAN ATTACHED.*

(b) **Direct Appeal of Ground Three:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐  No ☑

(2) If you did not raise this issue in your direct appeal, explain why: *INEFFECTIVE Asistant of Counsel MUST BE RAISED IN A 2255?*

(c) **Post-Conviction Proceedings:**

(1) Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☐  No ☑

(2) If your answer to Question (c)(1) is "Yes," state: *N/A*

Type of motion or petition: *N/A*

Name and location of the court where the motion or petition was filed: *N/A*

Docket or case number (if you know): *N/A*

Date of the court's decision: *N/A*

Result (attach a copy of the court's opinion or order, if available): *N/A*

(3) Did you receive a hearing on your motion, petition, or application?

Yes ☐   No ☑

(4) Did you appeal from the denial of your motion, petition, or application?

Yes ☐   No ☑   *N/A*

(5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?

Yes ☐   No ☑   *N/A*

(6) If your answer to Question (c)(4) is "Yes," state: *N/A*

Name and location of the court where the appeal was filed: *N/A*

Docket or case number (if you know): *N/A*

Date of the court's decision: *N/A*

Result (attach a copy of the court's opinion or order, if available): *N/A*

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue: *N/A*

**GROUND FOUR:**

(a) Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):   *N/A*

(b) **Direct Appeal of Ground Four:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ❑ No ❑

(2) If you did not raise this issue in your direct appeal, explain why:


(c) **Post-Conviction Proceedings:**

(1) Did you raise this issue in any post-conviction motion, petition, or application?

Yes ❑ No ❑

(2) If your answer to Question (c)(1) is "Yes," state:

Type of motion or petition:

Name and location of the court where the motion or petition was filed:


Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):


(3) Did you receive a hearing on your motion, petition, or application?

Yes ❑ No ❑

(4) Did you appeal from the denial of your motion, petition, or application?

Yes ❑ No ❑

(5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?

Yes ❑ No ❑

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:


Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

13. Is there any ground in this motion that you have <u>not</u> previously presented in some federal court? If so, which ground or grounds have not been presented, and state your reasons for not presenting them:

14. Do you have any motion, petition, or appeal <u>now pending</u> (filed and not decided yet) in any court for the judgment you are challenging?        Yes ❑   No ❑
    If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues raised.

15. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment you are challenging:

    (a) At preliminary hearing:

    (b) At arraignment and plea:

    (c) At trial:

    (d) At sentencing:

(e) On appeal:

(f) In any post-conviction proceeding:

(g) On appeal from any ruling against you in a post-conviction proceeding:

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time?     Yes ☐ No ☐

17. Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging?     Yes ☐ No ☐

(a) If so, give name and location of court that imposed the other sentence you will serve in the future:

(b) Give the date the other sentence was imposed:

(c) Give the length of the other sentence:

(d) Have you filed, or do you plan to file, any motion, petition, or application that challenges the judgment or sentence to be served in the future?     Yes ☐ No ☐

N/A

18. TIMELINESS OF MOTION: If your judgment of conviction became final over one year ago, you
must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2255 does not
bar your motion.*

It has not been 1 year since appeal was dismissed. If it has been dismissed. Defendant filed request to dismiss appeal with 2nd Cir. but has not heard anything. Counsel has not advised Def. of status of request

* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C.
§ 2255, paragraph 6, provides in part that:
    A one-year period of limitation shall apply to a motion under this section. The limitation period
shall run from the latest of—
        (1) the date on which the judgment of conviction became final;
        (2) the date on which the impediment to making a motion created by governmental action in
        violation of the Constitution or laws of the United States is removed, if the movant was
        prevented from making such a motion by such governmental action;
        (3) the date on which the right asserted was initially recognized by the Supreme Court, if
        that right has been newly recognized by the Supreme Court and made retroactively
        applicable to cases on collateral review; or
        (4) the date on which the facts supporting the claim or claims presented could have been
        discovered through the exercise of due diligence.

Therefore, movant asks that the Court grant the following relief:

*relief as Court deems appropriate*

or any other relief to which movant may be entitled.

_____
Signature of Attorney (if any)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Motion under 28 U.S.C. § 2255 was placed in the prison mailing system on

(month, date, year).

Executed (signed) on ___6-22-15___ (date).

_____
Signature of Movant

If the person signing is not movant, state relationship to movant and explain why movant is not signing this motion.

*Movant is blind. Signed motion but didn't fill out application; it was done by another inmate.*

*6/22/15*

Dee Deidre Farmer

RECEIVED
SDNY PRO SE OFFICE

2015 AUG 11  A 8:11

Reg. No. 23288037
Federal Correctional Institution
FCI- Gilmer
P.O. Box 6000
Glenville, WV 26351

August 4, 2015

Clerk
U.S. District Court
Southern District of New York
New York, NY 10007

Re: 28 USC 2255 filing
     US v. Farmer, 1:12-CR-00758-AJN

Dear Clerk,
     Enclosed you will find my
28 USC 2255 motion with its
exhibits and enclosures. See Attach
enclosure List.
     Please process these papers
as soon as possible and forward
to Judge Nathan for her consideration.
     Thank you.

                                        Sincerely yours,

pc: AUSA & Atty. Fasculo

# Enclosures

1. Letter to Judge Nathan 6/12/15
2. Letter to Judge Nathan 6/22/15
3. 28 USC 2255 Motion
4. Affidavit of Dee Farmer
5. Affidavit of Noleola Randall
6. Affidavit of Kia Earp
7. Affidavit of Christian Nolan, RN
8. Affidavit of Bernard Branson, MD
9. Affidavit of Alfred J. Saah, MD, MPH
10. Report from Johns Hopkins Hospital 11/18/94
11. Opinion from 4th Circuit
12. Letter to Louis Fasculo, 6/16/13
13. Proposed Witness List
14. Notes to Attorney Fasculo
15. Email to Fasculo 7/13/13
16. Email to J. McDonald 8/15/13
17. Email from J. Vento 1/7/14
18. Email to J. McDonald 9/10/13
19. Email to K. Earp 11/26/13
20. Letter to J. Vento (undated)
21. Email to J. Hagen 8/22/13
22. Letter to E. Holder 7/5/13
23. Report from Johns Hopkins Hospital 6/11/13
24. Letter to C. Maloney 7/6/13
25. Email/Re: Wilmer Eye Clinic 8/17/13
26. Letter from L. Randall to L. Bush (undated)

27. N.J. Police Dept. Report   1/14/12
28. NJ Civil Case  5/17/12
29. Sentencing Statement from Def. Farmer
30. Peace Be Still Booklet
31 Letter to Judge Nathan w/17 emails attached.

Dee D. Farmer
#23288037
Federal Correctional Institution
FCI - Gilmer
P.O. Box 6000
Glenville, WV 26351

June 12, 2015

Honorable A. Nathan
United States District Court Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

Re: United States v. Dee Farmer
    Case No. 12 CR 758 (AJN)

Dear Judge Nathan:
        Enclosed is my motion
under 28 USC 2255 and my
motion for appointment of
counsel under 28 USC 1915.
        I need appointment of
counsel because I am mentally
and physically sick. I suffer
from acute major depression

2

psychosis (hallucinations) and
bipolar disorder. I am
currently taking psychiatric
medication but it is not
helping with my depression
or hallucinations. I have
passive thoughts of suicide
and is tormented day and
night by hallucinations. I was
taking more medication but it
was reduced because of its
negative effects. I couldn't
remember anything, loss track
of time and couldn't maintain
my own thoughts. I am still
having these problems. In
addition, I have been diagnosed
with AIDS dementia which also
affects my thinking and ability
to follow and focus my thoughts.
      Physically, I am blind
and have to rely on inmates to
read and write for me, I
don't have any confidentiality
as to my medical condition
which has lead to problems of
discrimination and abuse. I

3

suffer from avascular neurosis as a result of AIDS infections. I have constant pain and have to use a wheelchair most of the time. I can't maintain my weight or move my bowels, and was in the community hospital for several days last month because I was losing blood and had to have a blood transfusion.

All of these mental and physical conditions have left me with no hope and I often feel like giving up. These are the reasons that I am asking you to give me a lawyer to represent me with my 2255 claims.

Also, I was not sent to a Butner or another medical facility as you had recommended and no explanation was giving for not following the Court's recommendation as required by prison policy.

I have been trying to file a 2255 for a long time but have had trouble finding inmates willing to help me.

4

Though a notice of appeal
was filed by trial counsel they
had told me that they were going
to file an Anders brief because
they didn't think there were any
merit issues for an appeal and
recommended that I dismiss the
appeal. After I decided to
follow their recommendation
they did file an appeal challenging
the intended loss calculation used
to determine my sentence range
under the Sentencing Guidelines.

By this time I had already
filed my notice to dismiss the appeal.
I sent it to all the courts and
parties and then sent a notarized
one to trial counsel as was
requested.

I dismissed the appeal to
clear the way for this 2255
motion.

There are only two claims
presented in the 2255 motion.
That I was denied effective
assistance of counsel when my
claim that I could not have

5

committed the crime charged
in the indictment because on
the dates that the forged court
order was allegedly sent I
was ill from AIDS infection
and was debilitated from the
infection and pain (narcotic)
medication. In addition, my
blindness deprived me of the
ability to prepare or send the
forged court order to Experian.
Trial counsel waited until the
Friday before the jury trial was
to start to advise me that
they would not be using my
health as a defense.

Though I felt that it was
because of their AIDS phobia
they blamed it on the court. Telling
me that the Court would not
allow it.

I had telephone conversations,
emails and letters asking trial
counsel asking them to obtain
evidence and expert witness
to present to the jury about my
health. Evidence and testimony

6

that would have shown that
I am in the late stage of AIDS.
And it is not uncommon for
me to have debilitating AIDS
sickness that have to be treated
with narcotic medication that
leaves me unable to function.
And that I was under this type
of treatment on the dates it is
alleged that the court (forged) was
prepared and sent. Evidence
about the history and course of
the disease as well as my own
personal medical history, I
also asked trial counsel to
have an ophthalmologist testify
about my eye disease that has
caused my blindness. I sent
detailed emails and letters to
trial counsel about this type
of evidence even listing potential
witness and their proposed
testimony.
      In the end of the day,
trial counsel did not obtain
any evidence or testimony about
my health. Telling me that

"the court" would not allow it. And they had no viable defense for me.

I felt that I had no choice but to plead guilty to the charge though I did not have any knowledge of the forged court order that was prepared and sent to experian. And was to sick and heavily medicated to have participated in the scheme.

The final issue/claim is about the intended loss value used to calculate my sentence. The Government used all of the persons listed in the forged court order to calculate the intended loss value. But, as the government already knew, many of the persons listed in the forged court order were frectitous persons that did not exist (and some of the persons were deceased). The claim is that no intended loss can be calculated against someone who does not exist. A non exisiting

8

person would have no credit
report or credit accounts for
a potential loss to occur. This
is the case for the non-
exisiting persons listed in
the forged court order.
     I thank you for your
consideration of my 2255 claims
and request for counsel.

Sincerely yours,

Dee Deidre Farmer

pc:

AUSA Rahulmukhi  Daniel B.
Louis Fasulto, Esq.      Tehrani
       Fasulo

Dee D. Farmer
23288037
Federal Correctional Institution
FCI- Gilmer
P. O. Box 6000
Glenville, WV 26351

June 22, 2015


Honorable A. Nathan
United States District Court Judge
Southern District of New York
United States Courthouse
500 Pearl Street
New York, NY 10007

Re: United States v. Dee D. Farmer
      Criminal No. Case 1:12-cr-00758-AJN


Dear Judge Nathan:
      I write this letter to
dispute the manner in which the
Government calculated the potential
loss value in this case, which
was accepted by this Honorable
Court.
      The potential loss value was



RECEIVED
PRO SE OFFICE
2015 AUG 11  A 8: 11

calculated by assigning an estimated loss amount to each person listed in the forged court order. That is, the forged court order allegedly sent to the credit agency for a copy of these persons credit reports, which the Government alleges would have been used to open instant credit, at major Department Stores, in their names to purchase merchandise.

It is respectfully submitted that this manner of calculating potential loss value is error because there is never any loss to a person whose name is used for the fraudlent purchase of goods and services. Common sense dictates that a person would never pay for good or services he/she did not recieve, order or purchase. Thus, there is not any potential value loss to these persons. There is many experts, layman and persons who has been involved in these type of cases that would have testified to these facts at trial or sentence but counsel

failed to investigate or present this issue.

The potential loss value should have been calculated against the credit bureau for loss of cost that it would have occurred if it had sent the credit reports without payment as requested by the fraudulent court order; and to the merchants who stood to lose merchandise as a result of these fraudulent purchases, which is boardline where the merchandise is recovered, as in this case,

The proper calculation of the potential loss value would have been significantly less than that proposed by the Government and accepted by the Court in sentencing the Defendant.

Accordingly, resentence is sought,

Respectfully submitted,

Dee Deidre Farmer

pc:
Counsel of record

**In the United States District Court**
**Southern District of New York**

RECEIVED
~~~~ PRO SE OFFICE

2015 AUG 11   A 8: 11

**United States, Plaintiff**
        No. 12-CR-758 AJN

v.

**Dee D. Farmer, Defendant**

### AFFIDAVIT

I, Dee Deidre Farmer do solemnly affirm as follows:

1. I am the Defendant in the above captioned criminal action

2. The indictment charges that Dee Farmer and others would, in sum, send court orders that were forgery to Credit Bureaus ordering that individual Credit Bureau reports be send to them, which they in turned would use to open instant accounts at major department stores. The criminal charges here based on a forged court order allegedly from the Southern District of New York and signed by a retired Judge from that District.

3. I was extradited from Maryland. Though my lawyers agreed that I should be released to go to New York because I had Multi-Drug Resistance, which required numerous injections and narcotic prescriptions.

4. The Court did deny defense counsel's motion but ordered that the U.S. Marshall provide her with a daily report of the administration of my medication, and if the medications were not provided I was to be taken to the hospital and if that failed I was to be released to my family, who already had dosages as well as training to administer the injectable medications.

5. The Judge's order was complied with and several days later I was transported by car directly from Baltimore, Maryland to New York, New York.

6. The following day the prison in New York took me to a New York hospital, where I was admitted and stayed for approximately three (3) weeks.

7. After being released from the New York Community Hospital and taken back to the jail, I filed a request to have counsel removed because I had not heard anything from him during my prolonged hospital stay. This request was granted and another attorney was appointed (Patrick Asby). However, this lawyer had to be removed because one of the partners in the law firm was listed in the forged court order. Another attorney was appointed which represented me to the end of this particular case.



8. I have had AIDS since 1986. I have seen the highs and lows of the diseases, including AIDS-related conditions. I have been hospitalized numerous times. Often unable to leave my residence due to various AIDS-related illnesses, particular Neuropathy as well as Avascular Necrosis.

9. In my first contact with the lawyers appointed to my case, I indicated I would like to have a jury trial and wanted experts in AIDS and ophthalmology (I have been diagnosed as legally blind) to testify that it is not uncommon for a person at my stage of the disease to have prolonged illness from AIDS related conditions. This would have supported my defense that I could not have been involved in this crime because I was deathly ill and suffering from pain the week of March 12, 2012 when this crime was allegedly committed.

10. The ophthalmologist would have testified to the deterioration of my vision, which would have supported my defense that I could not have committed this crime due to my decreased visual capacity because I cannot read materials that are printed below a certain character font.

11. Defense counsel did not research these issue as requested because they stated that the Court would not allow it and the Court would look at this as unfavorable for a medical-based defense proving the deterioration of vision, neuropathy in legs, as well as the surgeries that I had most recently had.  I did not learn that there was not an expert in ophthalmology until the eve of the jury trial. Sitting in the Courtroom looking about and envisioning a jury trial with just me testifying would not raise a reasonable doubt.  I leaned over and quietly told my lawyer I wanted to plead guilty. The Judge left the bench to give us time to talk about it. After discussing this with my attorneys, I again raised the defense of experts in the field of AIDS and AIDS-related conditions. Counsel stated that they remained firm in their decision about the "AIDS thing" but were going to use the prosecutors' ophthalmologist. This did not make logical sense to me because the prosecutor may not even call an expert.

12. The Court did proceed to accept my plea of guilty and made a date for sentencing.

13. In obtaining support letters for the Sentencing Memorandum, Counsel informed all of my letter writers to not include anything about my health or past criminal behavior.  None of the counsel working on the case would allow the March 12, 2012 sickness from AIDS as a defense; and would not allow it to be in any letters from individuals writing letters of support for recommending a reduced sentence.

14. Finally, counsel allowed the Government to use non-existing persons and dead persons in calculating the number of potential victims of this crime. At the end of a status hearing before Judge Nathan the Government admitted that a number of persons listed in the forged court order did not exist because erroneous information was provided, or the individuals were deceased.

15. There are numerous documents supporting these claims; however because of my legal blindness and AIDS-related illnesses I am unable to read the emails and other documents. I would ask that this Court consider this as a request for Rule 56 (f) Fed R. Cv.P, to order to government to disclose emails and phone calls pertaining to these issues.

16. And that this Court appoint counsel to assist me pursuant to 28 USC 2255 and 28 USC 1915.

17. In sum, I am claiming that the counsel provided me with false information to avoid my affirmative defense that on the week of March 12, 2012 I was too sick from AIDS-related conditions to have committed these crimes; and counsel allowed fictitious persons to be counted as potential victims where they do not even exist. This increased my score under the USC Sentencing Guidelines; raising my sentencing score and consequently terms of confinement.

In God's Holy Name, I declare and affirm that the foregoing is true and correct.

_7/12/15_
Date

_Dee Deidre Farmer_

In the United States District Court
For the Southern District of New York

| | |
|---|---|
| United States, | ) Criminal No: 12-CR- 758 -AJN |
| Plaintiff | ) |
| v. | ) (Judge Nathan) |
| Dee Deidre Farmer, | ) |
| Defendant | ) |

## AFFIDAVIT

I, Noleola Linda Randall, do hereby declare and affirm as follows:

1. I am gainfully employed at Catholic Charities in Baltimore, Maryland. I am an Administrative Assistant of Senior Services.

2. I m the mother of Dee Deidre Farmer, the Defendant in this case.

3. Prior to his arrest in this criminal case on June 2012, Dee lives with me in Baltimore, Maryland. Due to his need for medical assistance and his handicaps, Dee has lived with me all of his life when he was not incarcerated.

4. I am aware of Dee's medical and mental health diagnosis of Advanced multi-drug Resistant AIDS, Legal Blindness, Major Depression, and Unspecified Psychosis. These diseases have caused debilitating and potential fatal medical and psychiatric conditions that have required numerous prolonged hospitalizations. I am also aware that due to a series of over-medications on behalf of the BOP that Dee developed bed sores, only acquired by spending too much time compressed on one area of the body and developing sores that can become infected and can deteriorate to the level of the bone if not properly treated.

5. I was trained by medical doctors at the Moore Clinic, Johns Hopkins Hospital, Baltimore, Maryland in the administration of certain treatments for part of Dee's medical care.



6. I am a witness that Dee's illnesses and the treatment for them frequently leave him incapacitated and unable to function. This has been communicated to me by his prior BOP assigned aide, Nathan Hunter, who has subsequently been released to halfway house. His current aide and I have yet to communicate regarding Dees' behaviors and his concerns or lack thereof.

7. I have administered oral, intravenous, as well as intramuscular treatments to Dee on a daily basis to ensure that he receives the appropriate treatment to maintain as active and healthy as possible. Among the numerous medications I administered were narcotics such as Morphine, Oxycontin, as well as sleeping pills such as Ambien and his daily injections as Dee became unable to see to administer these.

8. With respect to the issue of Dee's ability to commit the crimes alleged in this case, I am a witness that this is impossible.

9. Dee's legal blindness deprives him of the ability to read. Without the ability to read it is impossible for Dee to have researched, prepared, signed and mailed the forged court order that is at issue. Dee was diagnosed with legal blindness years before this case ever was brought before the Court.

10. Furthermore, during the week of March 12, 2012, when the forged court order is alleged to have been created and transported, Dee was bedridden and unable to function due to AIDS related illness and its side effects.

11. I was present at the time that Dee was arrested in this case at my home in Baltimore, Maryland. I have been involved in every facet of this case, including communications with the various lawyers appointed to represent Dee.

12. I communicated to all lawyers the impossibility for Dee to have committed the crimes charge in this case above.

13. I was adamant that Dee's full medical and mental health conditions be presented at trial.

14. However, I was advised by all lawyers and clerks at the firms of Fasulo, Braverman, and Dimaggio, LLP that the Court would not allow these types of issues to be presented to a jury. Moreover, I was told not to include any

of this information in my communications to support Dee's case to the Court. I was told by attorney Lou Fasulo and law clerk Joe Vento that I should stick strictly to fact and to leave all health and emotional issues out of any communications to the Court—thus I did so.

15. In fact, these lawyers told me that they were not going to have any doctors or other medical professionals testify at the trial on the "impossibility" for Dee to be guilty of the alleged offenses.

16. Based on these firm instructions by the attorneys, which were revealed to everyone on the eve of day the jury trial was to begin, Dee was forced to plead guilty—overmedicated, multiple mental health diagnoses, as well as multiple AIDS related illnesses compacting his decision—something that no one in their clear mind would ever do.

I declare under the penalty of perjury that the foregoing is true and correct.

06/28/2015
Date

*Noleola Linda Randall*
Signature (Noleola Linda Randall)

Kia R. Earp
402 Technology Center Drive
Unit 2401
Stoughton, MA 02072



RECEIVED
SDNY PRO SE OFFICE

2015 AUG 11   A 8: 12

## AFFIDAVIT FOR DEE DEIDRE FARMER
## FCI GILMER INMATE 23288-037

I, Kia Earp, hereby affirm that I am acquainted with the above-named inmate and have been for numerous years.

I also hereby affirm and swear that I have been employed in the healthcare sector for approximately 15 years, functioning in both a clinical, operational, and executive capacity.

I have been made well aware of the progress of Dee Farmers' disease, as well as current, and multiple previous prognoses.

I hereby affirm that on or about March 2014, I engaged in numerous conversations with the law clerk of the law offices representing Dee Farmer in her case of US vs. Dee Farmer in the Southern District of New York.

These communications were in the form of telephone call as well as email with Joe Ven_____; the law clerk at the firm representing her case during this time.

After receiving copies of Dee's medication lists, active dosages, etc, I informed both Dee and the law clerk that she was over-medicated and unable to participate in her proceedings.

At this point in time I was asked by both Dee Farmer and Joe V. of the law firm to write a letter on Dee's behalf that may help reduce her sentencing by showing support from individuals that were familiar with her.

I wrote a length draft email and sent it to the law clerk only to be told I should censor the letter and remove ALL indication regarding her diagnosis of AIDS and any reference to this would only be detrimental to her trial process. I thoroughly disagreed with this comment and expressed my disapproval with the law clerk.

I later learned via Dee Farmer that all communications that were submitted by friends and family had been asked to remove any indication of her diagnosis of AIDS or any AIDS-related disease process.

I thoroughly explained to Mr. V_____ that I not only had a thorough clinical background on the topic, but was well acquainted with Dee Farmer and could easily tell



via our telephone conversations and letters a major deterioration in both her mental capacity as well as her physical health—none of which were being addressed at the detention center as they were awaiting the results of the trial.

It is for the reasons that I am pleading with you today to consider the 2255 motion due to the deception of the law offices that previously represented Dee Farmer and by not painting an entire picture of her state of mind at the time of the trial, her lack of knowledge as information was not being provided to her in a timely basis, but foremost of all, vital medical information that is public record on Google, was not released during the trial. This information would definitely have made an impact on jurors, should this have been a jury trial, but having all medical evidence presented to your Honor would also have allowed you to be more informed regarding numerous medical matters that should have been addressed.

I hereby swear and affirm the above information to be truthful and have documentation that can be provided as appendices if requested.

This ___29___ day of January 2015.

_____
Signature

___1/29/2015___
Date

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES | * | |
| v. | * | 12-2800 SAG |
| DEE FARMER | * | |
| | * * * | |

## AFFIDAVIT

I, Kisten Nolan, hereby affirm under penalty of perjury that the information contained below is true.

1. I am Clinical Nurse Manager at The Moore Clinic of the Johns Hopkins Hospital.

2. The Moore Clinic is an outpatient unit supervised by the Hopkins AIDS Service that currently consists of twelve examining rooms, four registrars, five nurses, two phlebotomists, and an outpatient treatment center. The clinic has approximately 20,000 patient visits per year and is staffed by eight mid-level practitioners (nurse practitioners and physician assistants), 18 primary care providers primarily from the faculty in the Division of Infectious Diseases (four are paid by the service and work fewer than six half-days per week; most of the rest provide volunteer service for one or two half-days per week). Major specialty services offered are neurology, psychiatry, gynecology, obstetrics, substance use, nutrition, viral hepatitis, pharmacy and adherence.

3. The Moore Clinic is the "centerpiece" of the AIDS Service which currently follows over 3,000 patients in various stages of HIV infection. This clinic has been developed to provide specialized services tailored to the idiosyncratic needs of patients with HIV infection. Services available within the clinic are subspecialty consults, counseling, case management, social work service, pulse oximetry, infusion services, lab services, wound



14

14

care. An outpatient pharmacy is located in the clinic. An inpatient service, the Polk Unit, coordinates inpatient care closely with the patient for admissions, discharges, induced sputum and pentamidine treatments.

4.  Dee Farmer, DOB May 3, 1965, SSN 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, is currently enrolled as a patient at the Moore Clinic. Dee has been diagnosed with advanced multi-drug resistant HIV infection/acquired immunodeficiency syndrome, avascular necrosis of the right hip, retinal cone dystrophy with decreased vision, peripheral neuropathy, probable spondylotic radiculopathy affecting C-6 nerve route, bi-polar disease, history of presumptive mycobacterium avium-intracellulare, anemia, and vitamin B-12 deficiency.

5.  Dee's treatment currently requires twice-daily injections of Fuzeon, weekly injections of Procrit and monthly injections of B-12. Dee is taking 15 active medications, including five HIV medications.

6.  I am informed that Dee's last injection of Fuzeon was in the morning of June 13, 2012 and that due to his current incarceration he has not received any subsequent medications.

7.  Any interruption in this course of treatment, even of an extremely limited duration, poses significant life threatening risks. If medications are stopped abruptly it could lead to potentially life threatening conditions with very limited treatment options. In Dee's case, comparable treatment options are already currently limited. Dee is on "salvage therapy." **The interruption of Dee's course of treatment posed by his incarceration is a life-threatening event.**

8.  If Dee is released today, and appears at our clinic, we will be able to assess the affect of his missed doses since yesterday and ensure he resumes his treatment.

_____               6/14/2012
Kisten Nolan                            June 14, 2012


15

BERNARD M. BRANSON, M.D.
2175 ELDORADO DRIVE, N.E.
ATLANTA, GEORGIA 30345

TELEPHONE (404) 248-1027

*RECEIVED NOV 2 9 1994*

November 20, 1994

Dee Farmer
23288-037
P.O. Box 1000
Butner, NC 27509

Dear Dee,

My apologies for taking so long to respond to your letter of September 12. I am curently working for the CDC (U.S. Centers for Disease Control), and spend a great deal of time traveling to the different locations where we are conducting HIV research projects. When you reached me by telephone, I had not reviewed your information sufficiently to identify any questions that would help clarify the specific information you need in the affidavit. I will try to contact your attorney, and am sending a copy of this letter and affidavit to him.

The affidavit I have enclosed is somewhat different from the sample you provided. It *is* my professional opinion that you could not have entered a knowing and intelligent plea at the time you did in 1986. However, I don't believe that the medication you were taking is the most compelling reason for this. From my recollection of examining you that time, and from the information in Dr. Polk's consultation, I believe you were experiencing the symptoms of primary HIV infection. In particular, the lymphadenopathy, neutropenia, neurological abnormalities, memory problems, and headaches suggest that your were suffering from something called encephalopathy. This is a disorder of the brain and central nervous system that occurs in 6-10% of persons shortly after they become infected with HIV (which, with time, also resolves on its own.) Dr. Polk's consultation alludes to this when he suggested "possible AIDS dementia." However, the specific condition was not first reported in the medical literature until 1987, so we didn't know enough at the time you were examined to specify this as your diagnosis. The medication you were taking may also have played a role. The combination of these two factors make it extremely improbable that your plea in 1986 was knowing and intelligent.

Please contact me if you need any further information.

Sincerely yours,

Bernard M. Branson, M.D.



IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DEE DEIDRE FARMER,          )
                           )
          Petitioner        )      NO.
                           )      (Criminal No. Y-86-0158)
     vs.                    )
                           )
UNITED STATES OF AMERICA,   )
                           )
          Respondents       )
                           )

. . . ooo0ooo . . .

## DECLARATION OF BERNARD M. BRANSON, M.D.

I, Bernard M. Branson, M.D., do hereby declare and state, in the presence of Almighty God, as follows:

1.  I am currently employed by the United States Government, Centers for Disease Control and Prevention, Division of STD/HIV Prevention.  However, at the time relevant to the clinical proceedings in this matter, I was engaged in the practice of medicine in Maryland, and on the Executive Board of the Physicians Association for AIDS Care (PAAC), Chicago, Illinois.

2.  With regard to my education, training, experience and expertise, I submit that I have been admitted as an expert in "the treatment of AIDS patients with the disease AIDS and AIDS related conditions" by the United States District Court for the District of Maryland, and by the Maryland Health Claims Arbitration Board.  The details of my education, training and experience qualifying me as an expert in the above noted areas are accurately described in the portion of my testimony attached hereto as EXHIBIT A.

3.  I have received the consultation report which B. Frank