UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: MAR 3 0 2016
```

---

Dee Farmer,

                    Petitioner,

        —v—

United States,

                    Respondent.

---

15-cv-6287 (AJN)
12-cr-758

MEMORANDUM &
ORDER

ALISON J. NATHAN, District Judge:

    Incarcerated petitioner Dee Farmer brings this *pro se* motion to vacate his conviction and sentence under 28 U.S.C. § 2255. Farmer pled guilty to conspiracy to commit mail fraud, conspiracy to commit an offense against the United States, and aggravated identity theft, and was sentenced to 72 months in prison. Farmer argues that his conviction and sentence should be vacated because he received ineffective assistance of counsel at both the guilty plea and sentencing stages. Also before the Court are Farmer's motion seeking the appointment of pro bono counsel, and his motion for the return of personal property seized by the Government. For the reasons set forth below, Farmer's Section 2255 petition and motion for pro bono counsel are denied. The Court requires additional briefing regarding Farmer's motion for the return of personal property.

I.      **Background**

        **A. Facts**

    Dee Farmer is a trans woman who uses male pronouns in connection with this case. *See United States v. Farmer*, No. 12-cr-758, Dkt. No. ("Crim. Dkt. No.") 92 at 3. Farmer has been diagnosed with advanced multidrug-resistant AIDS. *Farmer v. United States*, No. 15-cv-6287, Dkt. No. ("Civil Dkt. No.") 6-1 at 14. As a result, he has suffered severe health complications,

1

including degeneration of vision to the point of being legally blind. *See id.* Farmer's condition

requires him to regularly take an extensive array of medications. *Id.*; Civil Dkt. No. 6-2 at 1.

The following facts describing the offense conduct are drawn from the Government's

briefing. Farmer and his brother Lamont Randall (now deceased) engaged in various frauds

together beginning in January 2012. Gov't Br. at 1. On January 14, 2012, the pair were caught

by security officers at a Nordstrom in Paramus, NJ, after purchasing more than $14,000 in

merchandise using two credit accounts in other peoples' names. *Id.* Farmer and Randall were

arrested and charged by the State of New Jersey for this conduct ("the New Jersey incident"). *Id.*

On March 15, 2012, Farmer and Randall sent a forged court subpoena to Experian Credit

Agency, a credit reporting bureau. *Id.* at 2. The subpoena sought personal and financial

information on 37 individuals, and was accompanied by a cover letter claiming to be from a

lawyer named Benjamin Davis. *Id.* Experian determined that the subpoena was fraudulent, in no

small part because it purported to be signed by Judge Holwell, who had stepped down from the

bench prior to the date of the subpoena. *Id.* The United States Postal Inspection Service tracked

the subpoena back to Farmer and Randall, and Farmer was arrested on June 8, 2012. *Id.* at 4.

### B. Procedural History

Farmer pled guilty to a superseding indictment on September 12, 2013. Crim. Dkt. No.

67. The superseding indictment charged five counts arising from the forged subpoena scheme:

conspiracy to commit mail fraud, 18 U.S.C. § 1349; conspiracy to commit an offense against the

United States, 18 U.S.C. § 505; and three counts of aggravated identity theft, 18 U.S.C. § 1028A.

Crim. Dkt. No. 53. The three counts of aggravated identity theft referred to the following stolen

identities: (1) Judge Holwell, whose signature was used on the forged subpoena, (2) the 37

individuals named in the forged subpoena, and (3) George Seward, a man whose name was used

by Farmer to register a Post Office box that served as the return address for the subpoena. *Id.*

The presentence report ("PSR") calculated Farmer's offense level under the Sentencing

Guidelines to be 21. PSR at 10. Of those 21 levels, 12 were attributable to an intended loss

2

amount deemed to be between $200,000 and $400,000. *Id.* The PSR followed the
Government's calculation of the loss amount. *Id.* at 8. Essentially, the Government observed
that Farmer and Randall exploited two stolen identities to purchase $14,000 in merchandise at
Nordstrom in the New Jersey incident, and derived from this a loss amount of $7,000 per stolen
identity. *Id.* The Government then applied this loss amount to the forged subpoena, which
sought personal and credit information from 37 individuals. *Id.* at 9. If Farmer and Randall
could have obtained $7,000 from each of these identities, their total take would have been
$259,000. *See id.* The offense level of 21, combined with Farmer's criminal history category of
V, yielded a Guidelines range of 70–87 months, to be followed by a two-year mandatory
consecutive term of imprisonment (due to the aggravated identity theft charges). *Id.* at 18, 31.

Farmer's lawyers made a written objection to the PSR, requesting a hearing pursuant to
*United States v. Fatico*, 603 F.2d 1053 (2d Cir. 1979) (a "*Fatico* hearing") to make a more exact
determination of the loss amount. *Id.* at 23. The Court heard oral arguments on the issue of the
intended loss amount at a conference held on January 24, 2014. Crim. Dkt. No. 92. At the
conference, Farmer's attorneys disputed the total loss amount. However, they did so on legal
rather than factual grounds, and ultimately did not seek a *Fatico* hearing. *Id.* at 15–16.

On January 28, 2014, the Court handed down its sentence. Crim. Dkt. No. 84. The Court
rejected counsels' arguments regarding the loss amount, and calculated the Guidelines using a
loss amount of between $200,000 and $400,000. *Id.* at 8–11. The Court determined that the
appropriate Guidelines range of imprisonment for Farmer was 70–87 months plus the mandatory
consecutive 24-month term. *Id.* at 12. The Court sentenced Farmer to a total term of
imprisonment of 72 months. That sentence consisted of a significantly below-guidelines
sentence of 48 months on Counts I and II, plus the 24-month mandatory consecutive term for
Counts III, IV, and V. *Id.* at 26.

Farmer filed a notice of appeal on February 7, 2014, Crim. Dkt. No. 82, but withdrew the
appeal with prejudice on December 11, 2014, Crim. Dkt. No. 86. On August 10, 2015, Farmer
filed a motion to vacate his conviction and sentence under 28 U.S.C. § 2255. Crim. Dkt. No. 87;

Civil Dkt. No. 1.  Farmer filed a motion for appointment of pro bono counsel on December 11, 2015.  Civil Dkt. No. 6.  On March 1, 2016, Farmer filed a motion seeking return of personal property seized by the Government.  Civil Dkt. No. 10.  The Court turns to these motions now.

## II.   Motion to Vacate Conviction and Sentence

Farmer raises two arguments in his Section 2255 motion.[1]  First, Farmer argues that he received ineffective assistance of counsel at the guilty plea stage, because his attorneys told him that the Court would not permit a defense based on his ill health if the case went to trial.  Second, Farmer argues that he received ineffective assistance of counsel at the sentencing stage, because his attorneys failed to effectively contest the Government's proposed loss amount for purposes of calculating his sentencing Guidelines.  Farmer is proceeding *pro se*, and the Court will therefore "read his submissions broadly so as to determine whether they raise any colorable legal claims." *Parisi v. United States*, 529 F.3d 134, 139 (2d Cir. 2008).

### A.  Legal Standard

The Sixth Amendment entitles criminal defendants to effective assistance from an attorney at critical stages of their case, including guilty pleas and sentencing.  *Gonzales v. United States*, 722 F.3d 118, 130 (2d Cir. 2013).  To make an ineffective assistance of counsel claim, "a defendant must show: (1) that counsel's representation fell below an objective standard of

---

[1] In a filing dated February 2, 2016, Farmer raises a number of additional arguments: (1) that he received ineffective assistance of counsel on appeal; (2) that the loss amount from the New Jersey incident was $10,000, rather than $14,000; (3) that the calculation of the intended loss amount violated due process and equal protection; and (4) that Farmer's attorneys should have challenged the enhancements to his Guidelines for having more than ten victims, and for misrepresenting that he was acting on behalf of a government agency.  The Court will construe the filing as a reply and consider it even though it was untimely.  But the Court will not consider arguments raised for the first time in that filing because "arguments presented in this fashion deny the opposing party a fair opportunity to respond." *Snyder v. Graham*, No. 09 CIV. 10307, 2012 WL 983536, at *5 (S.D.N.Y. Mar. 22, 2012) (*pro se* habeas petitioner); *see Pointdujour v. Mount Sinai Hosp.*, 121 F. App'x 895, 896 n.1 (2d Cir. 2005) (per curiam) ("As a rule, we will not consider an argument raised for the first time in a reply brief, even by a pro se civil litigant.").  In the same filing, Farmer also requests that the Court hold its decision on the pending motions in this case in abeyance so that he can make a further filing at an unspecified date.  Civil Dkt. No. 9-7 at 2.  However, briefing on this motion is complete and the motion is fully submitted as per the Court's August 18, 2015, Order.  Civil Dkt. No. 3.  Farmer's request to hold the case in abeyance is denied.

reasonableness; and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *United States v. Brown*, 623 F.3d 104, 112 (2d Cir. 2010); *see Strickland v. Washington*, 466 U.S. 668 (1984).

Under the first prong, the Court is "mindful of the diversity of the bar and the variety of approaches effective attorneys might employ when dealing with a particular set of facts." *Parisi*, 529 F.3d at 141. As a result, the Court applies a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. The Court will also consider "the circumstances counsel faced at the time of the relevant conduct and evaluate the conduct from counsel's point of view." *Parisi*, 529 F.3d at 141 (ellipsis omitted). In the course of preparing a case, "[d]efense counsel has a 'duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.'" *Rosario v. Ercole*, 601 F.3d 118, 130 (2d Cir. 2010) (quoting *Wiggins v. Smith*, 539 U.S. 510, 521 (2003)). A court evaluating the reasonableness of an attorney's investigation must consider "the quantum of evidence already known to counsel," and "whether the known evidence would lead a reasonable attorney to investigate further." *Wiggins*, 539 U.S. at 527. "Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable," however, "and even strategic choices made after less than complete investigation do not amount to ineffective assistance—so long as the known facts made it reasonable to believe that further investigation was unnecessary." *Henry v. Poole*, 409 F.3d 48, 63 (2d Cir. 2005) (brackets omitted). "[F]ailure to make a meritless argument does not rise to the level of ineffective assistance." *United States v. Kirsh*, 54 F.3d 1062, 1071 (2d Cir. 1995).

The articulation of the second prong varies depending on the situation in which ineffective assistance of counsel is alleged. In the guilty plea context, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Gonzales*, 722 F.3d at 130 (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). In the sentencing context, "the defendant must show a

reasonable probability that, but for counsel's substandard performance, he would have received a less severe sentence." *Id.*

A district court considering a Section 2255 motion must hold a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Under this standard, a hearing is warranted if the motion sets forth "specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle [the defendant] to relief." *Gonzales*, 722 F.3d at 131. However, the Court need not hold a hearing "where the allegations are vague, conclusory, or palpably incredible." *Id.* at 130 (internal quotation marks omitted). In evaluating whether a hearing is necessary, the Court must consider any admissions made by the defendant at his plea hearing as possessing "a strong presumption of verity." *Id.* at 131 (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)).

### B. Ineffective Assistance of Counsel in Connection With Farmer's Guilty Plea

Farmer argues that he received ineffective assistance of counsel in connection with his guilty plea because his attorneys did not consider Farmer's ill health a viable defense in the event of trial. Crim. Dkt. No. 87 at 20–21, 30. Specifically, Farmer claims that his attorneys should have put on the following medical defenses: (1) that Farmer "could not have committed this crime due to [his] decreased visual capacity because [he] cannot read materials that are printed below a certain character font," and (2) that Farmer "could not have been involved in this crime because [he] was deathly ill and suffering from pain the week of March 12, 2012, when this crime was allegedly committed." *Id.* at 30. Farmer states that he instructed his attorneys to prepare these defenses, but that on the Friday before trial was scheduled to start, his attorneys informed him that "the court would not allow [them]." *Id.* at 7 (internal quotation marks omitted). As a result of his attorneys' representation, Farmer claims, he "felt that [he] had no choice but to plead guilty to the charge" despite his professed innocence. *Id.* Farmer's ineffective assistance of counsel claim fails under both prongs of *Strickland*.

6

Under the first prong of *Strickland*, Farmer has not demonstrated that his attorneys acted outside the range of reasonable assistance of counsel. 466 U.S. at 688. Farmer's attorneys correctly determined that his medical defenses would not be permitted by the Court. "Upon a proper request, a defendant is entitled to a jury instruction on any defense theory for which there is a foundation in the evidence." *United States v. Paul*, 110 F.3d 869, 871 (2d Cir. 1997). However, the Court may refuse to give an alibi instruction if "the alleged alibi evidence is not inconsistent with guilt." *United States v. Kwong*, 69 F.3d 663, 667 (2d Cir. 1995). Farmer's medical incapacitation during the week of March 12, 2012, is a species of alibi defense: he could not have committed the crimes charged, because at the time he was unavailable due to his illness. Farmer's blindness defense is analogous: he could not have committed the crimes charged because it was physically impossible for him to do so.

As Farmer's attorneys appear to have correctly assessed, the Court would not have permitted either medical defense because neither one is inconsistent with Farmer's guilt. Farmer was charged with conspiracy to commit fraud, and nothing about his role in the conspiracy required him to use his eyesight, or to be active during the week of March 12, 2012. The elements of conspiracy under federal law are:

> (1) an agreement between two or more persons to commit an unlawful act; (2) knowingly engaging in the conspiracy intending to commit those offenses that were the objects of the conspiracy; and (3) commission of an "overt act" by one or more members of the conspiracy in furtherance of the conspiracy.

*United States v. Reyes*, 302 F.3d 48, 53 (2d Cir. 2002). To find Farmer guilty on a conspiracy charge, there was no requirement that Farmer commit *any* overt act in furtherance of the conspiracy, much less an overt act that required reading or an overt act that took place during the week of March 12, 2012. *See Salinas v. United States*, 522 U.S. 52, 64 (1997) (citing *Bannon v. United States*, 156 U.S. 464, 469 (1895)). If Farmer knowingly participated in the conspiracy, it would be sufficient for Randall to be the only one to commit an overt act. *See id.*

The medical defenses are also consistent with Farmer's guilt on the three counts of aggravated identity theft, 18 U.S.C. § 1028A, charged in the indictment. The Government

7

charged Farmer as an aider and abettor to these crimes under 18 U.S.C. § 2.  Despite Farmer's

diminished vision and his claimed incapacity during the week of March 12, 2012, he could still

have furnished advice or assistance to Randall during the course of the identity theft scheme.

The medical defenses are therefore not inconsistent with guilt as an aider and abettor.  In

addition to accomplice liability, Farmer could also face liability for conspiring to commit these

crimes with Randall.  This is because "a defendant who does not directly commit a substantive

offense may nevertheless be liable if the commission of the offense by a co-conspirator in

furtherance of the conspiracy was reasonably foreseeable to the defendant as a consequence of

their criminal agreement." *United States v. Bruno*, 383 F.3d 65, 89 (2d Cir. 2004).  And as noted

above, the medical defenses are not inconsistent with Farmer's guilt on the conspiracy charge.

Farmer would not have been entitled to a jury instruction that his health problems are a defense

to the aggravated identity theft charges as an accomplice or co-conspirator.

Moreover, Farmer's statements at his guilty plea allocution and at sentencing make clear

that his medical condition could not and did not prevent his participation in the fraud and identity

theft charged against him.  At Farmer's change of plea conference, he described his conduct as

follows: "[I]n January of 2012, I conspired to obtain credit reports from Experian and then in

2012 of January [sic], I did cause—ordered a fraudulent order to go to Experian for credit reports

on certain individuals, and the order was fraudulently signed by the judge."  Crim. Dkt. No. 67 at

33–34.  When Farmer was asked whether he was involved in the fraudulent signing, he stated

that he was not.  *Id.* at 34.  However, he stated that he was aware of the fraudulent nature of the

signature.  *Id.*  At the plea allocution, Farmer also admitted to personally using the stolen identity

of George Seward.  *Id.*  At sentencing, Farmer wrote a statement that his attorneys read.  Crim.

Dkt. No. 84 at 21.  In the statement, Farmer described his role in the conspiracy as wholly

compatible with his medical condition:

> [M]y role was somewhat limited because of my inability to see the computer screen in
> order to compose lists of persons whose credit reports were to be requested, I also lacked
> the ability to fill out credit applications or read price tags.  All of these tasks fell to my
> brother with my advisements.

*Id.* As Farmer's statements indicate, because of Farmer's illness, he took a secondary or advisory role in many parts of the fraudulent scheme, letting his brother act directly. Farmer has presented no evidence that, contrary to his statements to the Court, he was medically unable to participate in the crimes charged in the indictment.

Farmer's blindness and alleged incapacity during one week in March are not inconsistent with the offenses charged against him or with the narrative of the allegations, and he was therefore not entitled to a jury instruction on these medical defenses. *See United States v. Bryser*, 954 F.2d 79, 87–88 (2d Cir. 1992) (defendant charged with conspiracy was not entitled to alibi instruction based on alibi for robbery committed in furtherance of conspiracy). Because Farmer's attorneys correctly determined that the medical defenses were not inconsistent with Farmer's guilt on the charges against him, Farmer has failed to demonstrate that it was outside the range of objectively reasonable conduct for his attorneys to tell him that the Court would not permit the defenses at trial. *Cf. Jamison v. Senkowski*, 204 F. Supp. 2d 610, 613 (S.D.N.Y. 2002) (petitioner was unable to demonstrate that attorney's failure to inform him of defenses was unreasonable because he could "not show[] that these defenses were in fact viable").

Furthermore, even if the medical defenses *were* minimally viable, Farmer would be unable to demonstrate that his counsels' decision not to pursue them was anything other than a strategic decision about how to proceed at trial. Farmer's attorneys appear to have been diligently pursuing his case and were prepared to go to trial in the event that Farmer did not plead guilty. *See* Crim. Dkt. No. 67 at 6–7; Crim. Dkt. No. 84 at 17. "It is reasonable to infer that experienced trial counsel chose to allocate resources to pursue more promising defenses rather than one[s] with a low probability of success." *DiMattina v. United States*, 949 F. Supp. 2d 387, 411 (E.D.N.Y. 2013). Such an inference is particularly reasonable if the defense left on the table is an ineffective defense that functions as a kind of alibi—as the medical defenses in this case do—because "[i]t is generally acknowledged that an attempt to create a false alibi constitutes evidence of the defendant's consciousness of guilt." *Id.* (quoting *Henry*, 409 F.3d at 65). Counsels' choice not to pursue the medical defenses therefore appears to be a reasonable

strategic decision of the sort that is "virtually unchallengeable" and cannot support a claim of ineffective assistance of counsel. *See Greiner v. Wells*, 417 F.3d 305, 319 (2d Cir. 2005). Farmer has failed to rebut the presumption of effectiveness, and his claim of ineffective assistance of counsel fails on this alternate ground. *Id.* at 320.

Farmer's claim further fails on the second prong of *Strickland* because he has failed to show prejudice. *See* 466 U.S. at 692–93. To demonstrate that he was prejudiced by ineffective assistance of counsel in the guilty plea context, a "defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Gonzales*, 722 F.3d at 130 (quoting *Hill*, 474 U.S. at 59). However, when the alleged ineffective assistance is the failure to make available an affirmative defense, the Court's "assessment of whether the defendant would have gone to trial but for counsel's errors 'will depend largely on whether the affirmative defense likely would have succeeded at trial.'" *Panuccio v. Kelly*, 927 F.2d 106, 109 (2d Cir. 1991) (quoting *Hill*, 474 U.S. at 59). Such "predictions of the outcome at a possible trial, where necessary, should be made objectively, without regard for the idiosyncrasies of the particular decisionmaker." *Hill*, 474 U.S. at 59–60 (internal quotation marks omitted). This objective assessment cannot be overcome solely by a defendant's testimony that he would have gone to trial had he known the defense was available, because "a defendant's testimony after the fact suffers from obvious credibility problems." *Panuccio*, 927 F.2d at 109 (internal quotation marks omitted). Farmer has provided nothing more than his own post-conviction statements to establish that he would have gone to trial if his attorneys had told him that, although the medical defenses were meritless and the court would likely refuse to instruct the jury on them, the attorneys would nonetheless go forward with them. In light of the Court's determination that the medical defenses were not viable, Farmer's "assertion is insufficient to demonstrate that he was prejudiced by trial counsel[s'] actions." *Braham v. Rodriguez*, No. 3:02CV2153, 2005 WL 282616, at *6 (D. Conn. Feb. 3, 2005). Farmer has failed to meet either prong of the *Strickland* test, and his claim of ineffective assistance of counsel at the guilty plea stage must be dismissed. Because the files and records of

this case conclusively show that Farmer is entitled to no relief, an evidentiary hearing is unnecessary. *See* 28 U.S.C. § 2255(b).

## C. Ineffective Assistance of Counsel at Sentencing

Farmer next argues that he received ineffective assistance of counsel at sentencing because his attorneys failed to effectively litigate the intended loss amount for the forged subpoena. As discussed above, the Court ultimately accepted the Government's argument that the loss amount should be calculated by multiplying the number of identities in the forged subpoena (37) by the amount of money per stolen identity obtained by Farmer and Randolph during the New Jersey incident ($7,000). Farmer makes a number of arguments that he claims his attorneys should have made. Farmer first argues that the $7,000 intended loss amount should not be applied to all 37 names in the forged subpoena, because some of those names belonged to fictitious or dead individuals. Stating that "trying to obtain credit reports is like fishing," Crim. Dkt. No. 89 at 8, Farmer claims that most of the 37 identities would likely have been either unusable for credit fraud for one reason or another, or that they would only have been eligible for small amounts of fraudulent credit. Second, Farmer claims that he and Randall used at least three different stolen identities in the New Jersey incident, so the loss amount per identity should be calculated by dividing $14,000 by three instead of by two. *Id.* at 7–8. Third, Farmer claims that the loss he intended to cause should be assessed against the merchants and credit reporting bureaus rather than against the individuals whose identities he attempted to steal. Crim. Dkt. No. 87 at 26–27.

Farmer has failed to rebut the presumption of effectiveness and show that his attorneys' litigation of the loss amount was unreasonable. As to Farmer's first argument, at the conference held on January 24, 2014, Farmer's attorneys made points similar in substance to those Farmer claims should have been raised. Specifically, Farmers' attorneys argued that (1) even if the forged subpoena were successful, it might not have brought in information enabling Farmer to obtain credit on behalf of all 37 identities, and (2) some of the identities may not have been able

11

to obtain $7,000 in credit. Crim. Dkt. No. 92 at 5–6, 14. Farmer's attorneys stated that they had "amplified" their argument about the loss amount "to reflect [Farmer's] concerns on this issue," and that counsel and Defendant were currently on the same page. Farmer agreed, stating, "[t]hat's correct." *Id.* at 17.

Insofar as these arguments Farmer's attorneys made differ from the arguments that Farmer now claims his counsel should have made, the divergence represents an unchallengeable strategic decision that cannot be the basis for a claim of ineffective assistance of counsel. Farmers' attorneys were not required to make every possible variation on the claim that only a subset of the 37 names could be expected to actually be worth $7,000 in credit. "The determination of which arguments to put forth is within counsel's discretion," and "[i]t is only in instances when counsel pursued 'clearly and significantly weaker' issues in lieu of 'significant and obvious' issues that counsel's conduct may be found to be constitutionally deficient." *Percan v. United States*, 294 F. Supp. 2d 505, 513–14 (S.D.N.Y. 2003) (quoting *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994)). The most important difference between counsels' arguments and the ones in Farmer's petition is that his attorneys framed the dispute as a legal argument about how loss amounts should be calculated rather than a factual dispute about what loss Farmer actually intended to cause. *Id.* at 15. Farmer's attorneys had a legitimate strategic reason for doing so: to avoid a *Fatico* hearing that might have made Farmer's sentencing guidelines even higher. Prior to the conference where these arguments were made, the attorneys met with Farmer and decided not to bring a factual challenge to the loss amount, for fear that the Government could use the opportunity to demonstrate an even higher intended loss figure. *See* Crim. Dkt. No. 87-3 at 22. And at the conference, the Government made this threat explicitly, warning that at a *Fatico* hearing it would seek to put on evidence "that could significantly change the loss amount, not downwards, but upwards." Crim. Dkt. No. 92 at 11. "[T]he decision to forego a *Fatico* hearing is a matter of strategy, and a court will presume that such a strategy is sound absent a strong showing to the contrary." *Papetti v. United States*, No. 09-cv-3626, 2010 WL 3516245, at *6 (E.D.N.Y. Aug. 31, 2010) (internal quotation marks omitted). It was entirely

12

reasonable for Farmer's attorneys to frame their arguments as legal rather than factual to avoid subjecting Farmer to the risk of a much higher loss amount and a correspondingly higher Guidelines range. *See Melicharek v. United States*, Nos. 07-cr-907, 09-cv-8542, 2010 WL 1948492, at *4 (S.D.N.Y. May 13, 2010) (counsel reasonably chose to forego a *Fatico* hearing to avoid risk of Government proving a higher loss amount); *Jaafar v. United States*, No. 12-cv-3321, 2015 WL 893571, at *6 (E.D.N.Y. Mar. 2, 2015) (same).

Farmer's second argument, that his attorneys should have argued that the $14,000 fraud in the New Jersey incident should have been attributed to three stolen identities instead of two, faces the same problem: it is a factual challenge requiring a *Fatico* hearing that would have placed Farmer at risk of an even higher loss amount. Farmer points to a report written by Nordstrom security regarding the New Jersey incident that mentions a third credit card possessed by Farmer. Crim. Dkt. No. 89 at 16–17. However, the report does not indicate that Farmer successfully made any purchases with this card. This showing is not sufficient to demonstrate that a reasonable investigation was not conducted or that the "known evidence" regarding the New Jersey incident "would lead a reasonable attorney to investigate further," *Wiggins*, 539 U.S. at 527. Nor does it overcome the presumption that Farmer's attorneys' decision to forego a *Fatico* hearing was a matter of reasonable strategy. *See Papetti*, 2010 WL 3516245, at *6.[2]

Farmer's third argument, that the loss amount should have been allocated to the merchants he would have defrauded instead of the individuals in whose name he would have attempted to acquire fraudulent credit, is meritless. Farmer provides no explanation of why this

---

[2] Farmer also suggests that the Government violated its *Brady* obligations by failing to disclose the Nordstrom security report to him. However, the *Brady* disclosure obligation only applies to "material" evidence, meaning evidence "which, if not disclosed, creates a reasonable probability of altering the outcome" of a proceeding. *United States v. Coppa*, 267 F.3d 132, 146 (2d Cir. 2001). As discussed above, the Nordstrom security report does not indicate that Farmer made successful purchases on three different cards during the New Jersey incident. Even if it had been disclosed, there is no reasonable probability that the Nordstrom security report would have induced Farmer's attorneys to hold a *Fatico* hearing (over their valid strategic reasons for not doing so), much less a reasonable probability that the outcome of sentencing would have been altered. Any *Brady* claim arising from the Nordstrom security report is meritless.

would result in a reduced loss calculation, and therefore there is no reason why his attorneys should have been expected to make this argument.

Farmer's attorneys litigated the loss amount in this case in a reasonable (if ultimately unsuccessful) way, and the Constitution did not require them to raise every possible colorable argument. *See Knowles v. Mirzayance*, 556 U.S. 111, 127 (2009). Farmer has not made a sufficient showing to demonstrate that his attorneys' decisions fell outside the range of reasonable strategic choices. Accordingly, the Court need not reach the prejudice prong of *Strickland*. As with Farmer's argument regarding his guilty plea above, the files and records of this case conclusively show that he is entitled to no relief, and there is no reason to hold a hearing. *See* 28 U.S.C. § 2255(b).

### III.    Motion to Appoint Pro Bono Counsel

Farmer has requested that the Court appoint pro bono counsel to assist him with his petition. Civil Dkt. No. 6. The Criminal Justice Act provides the Court with discretion to appoint an attorney to represent a petitioner seeking relief under 28 U.S.C. §§ 2241, 2254, or 2255 who is unable to afford counsel if "the interests of justice so require." 18 U.S.C. § 3006A(a)(2)(B). There is no requirement that an indigent habeas petitioner be appointed pro bono counsel, *United States v. Doe*, 365 F.3d 150, 155 (2d Cir. 2004), unless the Court determines that an evidentiary hearing is necessary, *Graham v. Portuondo*, 506 F.3d 105, 107 (2d Cir. 2007). Appointment of pro bono counsel must be done judiciously in order to preserve the precious commodity of volunteer lawyers for those litigants who truly need a lawyer's assistance. *Cooper v. A. Sargenti Co.*, 877 F.2d 170, 172–73 (2d Cir. 1989).

In deciding whether to grant an indigent *pro se* petitioner's request for pro bono counsel, the Court must first decide whether the petitioner's claim seems likely to be of substance. *Hodge v. Police Officers*, 802 F.2d 58, 60–61 (2d Cir. 1986); *see, e.g., Anderson v. Bradt*, No. 13-CV-4502, 2013 WL 5208045, at *1 (E.D.N.Y. Sept. 13, 2013) (applying the *Hodge* framework to habeas corpus proceeding). For the reasons above, the Court has concluded that Farmer's claim

is not likely to be of substance, and that no evidentiary hearing is necessary.  Farmer's motion to appoint pro bono counsel is denied.

## IV.     Motion for Return of Property

Farmer has moved for the Court to order the return of his personal property seized by the United States Postal Inspectors pursuant to search warrants issued in the course of investigating Farmer's case.  Civil Dkt. No. 10.  In its response to Farmer's request, the Government represents that if Farmer's Section 2255 motion seeking to vacate his sentence and conviction were successful and the case were to go to trial, the Government may introduce some of the seized property as evidence.  Civil Dkt. No. 11.  The Government therefore requests that Farmer's application be denied without prejudice pending the Court's decision on Farmer's Section 2255 motion.  The Court has now denied Farmer's Section 2255 motion, *see supra*, and the Government's request is therefore denied as moot.  The Government is ordered to submit a letter containing its views on Farmer's request in light of this disposition.

## V.     Conclusion

For the reasons set forth above, Farmer's Section 2255 motion and his motion for the appointment of pro bono counsel are denied.  The Government is ordered to submit its views on Farmer's motion for the return of property in light of this order no later than April 8, 2016.  This resolves Dkt. No. 87 in Case No. 12-cr-758, and Dkt. No. 6 in Case No. 15-cv-6287.

The Court declines to issue a certificate of appealability.  Farmer has not made a substantial showing of a denial of a federal right, and appellate review is therefore not warranted. *See Love v. McCray*, 413 F.3d 192, 195 (2d Cir. 2005).  The Clerk of Court shall dismiss the petition and close Case No. 15-cv-6287.


SO ORDERED.


15

Dated: ___March 30___, 2016
        New York, New York

_____
ALISON J. NATHAN
United States District Judge